UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRACTURELABS OÜ, | ) |
|     PLAINTIFF, | ) No. 24-cv-10249 |
|     v. | ) Judge Jeffrey I. Cummings |
| JUMP TRADING, LLC, | ) |
|     DEFENDANT. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff FractureLabs Oü ("FractureLabs") brings this action against defendant Jump Trading, LLC ("Jump Trading"). The complaint alleges that Jump Trading engaged in a scheme to defraud FractureLabs and manipulate the market in connection with an initial exchange offering of DIO tokens (a cryptocurrency) and asserts state law claims for fraud and deceit, civil conspiracy to commit fraud, breach of contract, and breach of fiduciary duty. (Dckt. #1). FractureLabs identifies 28 U.S.C. §1332(a)(2) as the basis for this Court's subject matter jurisdiction. (*Id.* ¶10).

Jump Trading has filed a Federal Rule 12(b)(1) Motion to Dismiss, (Dckt. #20), arguing that this Court lacks subject matter jurisdiction under Section 1332 because there is a U.S. citizen on only one side of the suit and foreign parties on both sides, (*id.* at 2). In support of its argument, Jump Trading relies on its Rule 7.1 Corporate Disclosure Statement and Local Rule 3.2 Notice of Affiliates, (Dckt. ##10 to 10-3), ("Corporate Disclosure"), which indicates that Jump Trading is, for the purpose of determining diversity jurisdiction, a citizen of various U.S. states and certain foreign nations. (*Id.*; Dckt. #20 at 2–3).

Jump Trading also moves for leave to file its Corporate Disclosure under seal arguing that "the identities, places of residence, and citizenship of the members and trustees of Jump Trading and its affiliated entities . . . constitute sensitive confidential and private business and personal information that is not publicly available and the disclosure of which would result in injury." (Dckt. #9 at 2–3).

FractureLabs opposes Jump Trading's motions and has filed a Motion to Permit Jurisdictional Discovery seeking leave to conduct discovery into Jump Trading's assertions that it is a citizen of various U.S. states and foreign nations. (Dckt. #23).

For the reasons set forth below, the Court denies Jump Trading's Motion for Leave to File Under Seal Its Corporate Disclosure and Notice of Affiliates, (Dckt. #9), and grants Jump Trading's Opposed Rule 12(b)(1) Motion to Dismiss, (Dckt. #20). Because the Court finds that dismissal is proper, FractureLabs' Motion to Permit Jurisdictional Discovery, (Dckt. #23), is denied as moot.

**I.      Jump Trading Has Not Shown Good Cause to Seal Its Corporate Disclosure.**

The Court begins with Jump Trading's motion for leave to file its Corporate Disclosure under seal.

As the Seventh Circuit has made clear, "[s]ecrecy in judicial proceedings is disfavored," *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014), and "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality," *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute

to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret. . . .").

Information filed with the Court is therefore "open to public inspection unless" the information "meets the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc.*, 297 F.3d at 545. Upon a showing of good cause, the Court may enter an order directing information that meets this requirement be filed under seal. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999); *see also* Local Rule 26.2 ("The court may for good cause shown enter an order directing that one or more documents be filed under seal."). However, a motion seeking to seal has "no prospect of success" unless it analyzes "in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l, Inc.*, 297 F.3d at 548. General assertions that the information is "commercial" or otherwise sensitive will not suffice. *Id.* at 546.

The Court looks to Jump Trading, as the party advocating for the Corporate Disclosure's secrecy, for an explanation of why it would be proper to seal the document. *Zip Top, Inc. v. S.C. Johnson & Son, Inc.*, No. 22 C 5028, 2024 WL 989380, at *10 (N.D.Ill. Mar. 7, 2024). Jump Trading asserts—with the support of an affidavit from its general counsel, (Dckt. #18)—that competitors could use the information provided in its Corporate Disclosure to "undermine its competitive position in the marketplace," "take unfair advantage of Jump Trading in negotiations," "otherwise prejudice Jump Trading's business interests," and "subject [it] to increased cybersecurity risks including targeted cyber-attacks . . ." (Dckt. #9 at 3). These arguments fail to meet the requirements for sealing set out by the Seventh Circuit and Local Rules.

3

First, "general interests in commercial advantage and privacy aren't sufficient reasons to keep information relevant to judicial decision-making secret." *Palacio v. Med. Fin. Sols.*, No. 21 CV 1288, 2022 WL 2132505, at *2 n.4 (N.D.Ill. June 14, 2022) (citing *Baxter*, 297 F.3d at 545); *see also Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) ("Many a litigant would prefer that the subject of the case . . . be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.").

Moreover, the Seventh Circuit and other courts have found general statements of harm, such as those offered by Jump Trading, are insufficient to justify sealing. *See Baxter*, 297 F.3d at 547 ("Beyond asserting that the document must be kept confidential because we say so . . . this contends only that disclosure 'could . . . harm Abbott's competitive position.' How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained."); *see also Walton v. Gergian Gardens Healthcare LLC*, No. 4:24 CV 253 CDP, 2024 WL 1636707, at *1 (E.D.Mo. Apr. 16, 2024) ("This Court has held that such conjecture and conclusory statements about potential harm, with nothing more, do not constitute compelling reasons to justify sealing an entity's disclosure statement."); *Wilkins v. Tory Burch, LLC*, 2023 WL 3600084, at *2 (E.D.Mo. May 23, 2023) (denying motion to seal disclosure statement when a defendant "asserted that [the identity of its members was] sensitive information [and] . . . that public disclosure of its members' information could harm its business" but "fail[ed] . . . to explain why"); *Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*, 2023 WL 2435806, at *1–2 (M.D.Fla. Feb. 16, 2023) (finding that plaintiffs' assertion that sealing was needed to protect "the privacy interests of the members," without more, "d[id] not overcome the presumption of public access").

Furthermore, Jump Trading has not sufficiently explained, in detail, how disclosure of the identities, places of residence, and citizenship of Jump Trading's members, and their affiliation with Jump Trading would, as Jump Trading puts it, "subject [its members to] increased, non-hypothetical risks of cyberattacks . . . ." (Dckt. #16 at 5). Jump Trading states that its members have been the subject of cyberattacks prior to the public disclosure of such information, and its affidavit does not explain how the disclosure of their identities and citizenship alone will increase the likelihood of additional attacks. Moreover, Jump Trading fails to cite any binding authority which demonstrates that a litigant's cybersecurity concerns outweigh the presumption in favor of public proceedings.

On the other hand, the presumption in favor of public access is even stronger here, where Jump Trading seeks to seal the one filing that it relies upon in support of its motion to dismiss—namely, its Corporate Disclosure. *See Baxter Int'l, Inc.*, 297 F.3d at 546 ("the dispositive documents in any litigation enter the public record"); *RGB Plastic, LLC v. First Pack, LLC*, 184 F.Supp.3d 649, 653 n.4 (N.D.Ill. 2016) (noting that the presumption in favor of public access is even stronger when the evidence is relied on for judicial decision-making); *see also Lugosch v. Pyramid Co.*, 435 F.3d 110, 121 (2d Cir. 2006) (explaining the presumption in favor of public access to documents is strongest where the documents "are used to determine litigants' substantive legal rights."); *Aristotle, Inc. v. NGP Software, Inc.*, 714 F.Supp.2d 21, 24 (D.D.C. 2010) (stating the presumption "favors public access to evidence that was instrumental to the Court's ruling."). Because the Court must rely on the information provided in the Corporate Disclosure to determine whether diversity jurisdiction exists, the Court finds that Jump Trading has not shown good cause as to why the Corporate Disclosure should be sealed. *Mayer v. Patriot Pickle Inc.*, No. 23-CV-1299-LJV, 2024 WL 162881, at *4 (W.D.N.Y. Jan. 16, 2024) ("because

5

[the corporate disclosure statement] is relevant to the question of whether the Court in fact has Article III judicial power over the case, it is necessarily valuable to the exercise of that power, entitling the presumption of access that attaches to it to at least some weight."); *Stern v. Cosby*, 645 F.Supp.2d 258, 264 n.1 (S.D.N.Y. 2009) (ordering sealed documents relied upon by the Court in ruling on the defendant's motion for summary judgment to be unsealed).

The two cases cited by Jump Trading do not demand a different conclusion. In *Martell v. X Corp.*, No. 23-cv-5449, Dckt. #12 (N.D.Ill. Aug. 16, 2023), the court granted defendant's motion to seal in a minute order without issuing any explanation and, unlike here, the *Martell* defendant did not seek to rely on its corporate disclosure in its motion to dismiss. In *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-CV-00932-RCJ, 2014 WL 5687730 (D.Nev. Nov. 4, 2014), the court granted defendant's motion for leave to file a redacted certificate of interested parties because, once more (and unlike here) the document sought to be sealed was not used in connection with a dispositive motion where the "public interests prevail." *Id.* at *2.

The fact that Jump Trading offered to share the Corporate Disclosure with FractureLabs (and FractureLabs refused) also does not impact the Court's finding. Even assuming FractureLabs had accepted Jump Trading's offer, the parties' agreement would not constitute a sufficient basis to now file the Corporate Disclosure under seal, particularly where it forms the basis of Jump Trading's motion to dismiss. Under settled Seventh Circuit precedent, "the dispositive documents in any litigation enter the public record notwithstanding any earlier agreement," because the public is "entitled to know what the heavy financial subsidy of litigation is producing." *See Baxter Int'l, Inc.*, 297 F.3d at 546. Moreover, this Court is in full accord with the proposition adopted by other courts to the effect that "[c]orporations and limited partnerships may offer individuals protection from liability, but they do not entitle individuals to anonymity in

6

court proceedings." *Darton Archery, LLC v. Bowtech, LLC*, No. C.A. 23-140-CFC, 2023 WL 2755760, at *1 (D.Del. Apr. 3, 2023); *Walton*, 2024 WL 1636707, at *1 (same).

In sum: Jump Trading has not shown that good cause exists to seal its Corporate Disclosure (a dispositive document for the reasons explained below), such that Jump Trading's privacy interests outweigh the interests of the public in the full transparency of the judicial decision-making process. Accordingly, Jump Trading's Motion for Leave to File Under Seal its Corporate Disclosure, (Dckt. #9), is denied.

**II.  This Court Does Not Have Subject Matter Jurisdiction Over FractureLabs' Claims.**

The Court next turns to Jump Trading's Motion to Dismiss under Rule 12(b)(1). When considering a Rule 12(b)(1) motion, the Court may consider matters outside of the pleadings to determine whether subject matter jurisdiction exists. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). "[A] plaintiff faced with a [Rule] 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). Here, Jump Trading argues that this Court does not have diversity jurisdiction over this case because there is a U.S. citizen on only one side of the suit and foreign parties on both sides. (Dckt. #20 at 2). The Court agrees.

Federal courts are courts of limited jurisdiction. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1316 (7th Cir. 1997). Thus, "in the absence of jurisdiction, a court is powerless to act." *Rowell v. Franconia Mins. Corp.*, 706 F.Supp.2d 891, 892 (N.D.Ill. 2010), *quoting Lewis v. Local Union No. 100 of the Laborers' Intl. Union of N.A., AFL–CIO*, 750 F.2d 1368, 1377 n.11 (7th Cir. 1984). Section 1332(a), which governs federal jurisdiction in diversity cases, requires complete diversity among the parties. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). "For

7

diversity jurisdiction purposes, the citizenship of an LLC [like Jump Trading] is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).

FractureLabs alleges, and the parties do not dispute, that it is citizen of Estonia and the United Kingdom. (Dckt. #1 at ¶8; Dckt. #20 at 2). Through its Corporate Disclosure, Jump Trading indicates that it is a citizen of Illinois, New Jersey, New York, China, France, India, and Russia. (Dckt. #10).[1] In other words, this suit is one "in which there is a U.S. citizen on only one side of the suit and foreign parties on both sides." *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 361 F.3d 359, 361 (7th Cir. 2004) (cleaned up). This Court does not have diversity jurisdiction in such cases. *Id.*; *see also Dexia Credit Local v. Rogan*, 629 F.3d 612, 618 (7th Cir. 2010) (explaining that diversity jurisdiction is "destroyed" where, like here, "the party on one side of a case is foreign . . . and the party on the other side is both domestic and foreign.). Accordingly, there is no diversity of citizenship between the parties pursuant to Section 1332, and no basis for federal subject matter jurisdiction. *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1041 (7th Cir. 2018) (affirming dismissal for lack of diversity jurisdiction of action brought by foreign plaintiff against both foreign and domestic defendants).

## **CONCLUSION**

For the foregoing reasons, the Court denies Jump Trading's Motion for Leave to File Under Seal Its Corporate Disclosure and Notice of Affiliates, (Dckt. #9). The Clerk of Court is directed to unseal the Corporate Disclosure, (Dckt. #10). The Court grants Jump Trading's

---

[1] Jump Trading's Corporate Disclosure indicates that certain members in its chain of ownership are residents of Illinois and citizens of foreign nations. (Dckt. #10-3). The fact that certain members are residents of Illinois does not impact the Court's analysis. Their citizenship for purposes of determining Section 1332 jurisdiction includes the foreign nation regardless of whether they are permanent-resident aliens of the U.S. *See Intec USA, LLC v. Engle*, 467 F.3d 1038, 1043 (7th Cir. 2006) ("permanent-resident aliens have both state and foreign citizenship").

Opposed Rule 12(b)(1) Motion to Dismiss, (Dckt. #20).  Because the Court finds that dismissal is proper, FractureLabs' Motion to Permit Jurisdictional Discovery, (Dckt. #23), is denied as moot.

**Date: June 4, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**